Eastern District of Kentucky
**FILED**

MAR 0 5 2010

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 10- 29

UNITED STATES OF AMERICA                               PLAINTIFF

V.                       **PLEA AGREEMENT**

JAMES W. DAVIS                                         DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to the lone count of the Criminal Information, charging a violation of 18 U.S.C. § 1349, Conspiracy to Commit Wire Fraud (18 U.S.C. § 1343).

2. The essential elements of Conspiracy under § 1349 are:

>   (a) First, that two or more persons conspired to commit the crime of wire fraud; and
>
>   (b) Second, that the defendant knowingly and voluntarily joined the conspiracy.

3. As to the lone count of the Criminal Information, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

>   James Davis, a businessman from Detroit, Michigan, was the owner and founder of Motor City Enterprises, The Alpha & Omega Group, and Jerrico Builders, all Kentucky limited liability companies. Between 2004 and 2006, Davis generally worked in the residential construction industry in Central Kentucky.

Kim Allen Clay, an attorney, owned and operated Universal Title Service, in Lexington, Kentucky. Universal Title Service conducted title searches, sold title insurance, prepared paperwork for and conducted real estate closings, and provided escrow services for real estate transactions.

During 2004, 2005, and up until April 2006, James Davis conspired with Kim Allen Clay, tax preparer Elizabeth C. Stewart, home buyers Barry Buchignani, Jeffrey Peterson, Aamir Saadiq, Jerald Lynch, Brenda Yates, Keith O. Jackson, realtor Thomas R. Muhammad, also known as Thomas A. Richmond, and mortgage professionals Warren Reid and Felix Oliver, to make false representations to mortgage lenders regarding financial matters relating to the purchase of residential real estate in Fayette, Madison, and Jessamine Counties, Kentucky.

During 2004 and 2005, Universal Title Services handled at least eight real estate closings in which James Davis was the buyer of the property. A number of other closings handled by Universal Title involved James Davis as the seller. During the same time period, Universal Title Services handled approximately 20 real estate closings involving Barry Buchignani, Jeffrey Peterson, Aamir Saadiq, Jerald Lynch, Brenda Yates, Keith O. Jackson, and Thomas R. Muhammad as home buyers.

Each of the transactions involved mortgage financing. During these transactions, misrepresentations were made to the mortgage lender for the purpose of securing the requested loan. The conspirators involved in the transaction either made the misrepresentations, were informed of the misrepresentations, or were provided documents containing the misrepresentations.

For some of the transactions, Kim Allen Clay, through Universal Title Services, would produce or cause to be produced HUD-1 real estate closing forms that contained false information regarding the down payment made, the existence of liens, or how the proceeds of the loan were distributed, including whether a previous mortgage was satisfied.

For some of the transactions, the buyer of the property, with the knowing assistance of mortgage professionals Warren Reid and Felix Oliver, would make false statements on a mortgage application. The misrepresentations included whether the buyer intended to live in the property, the amount and

2

source of the down payment, the income and assets of the buyer, and the buyer's outstanding debts.

For some of the transactions, tax preparer and bookkeeper Elizabeth Stewart would prepare financial documents which would misstate the financial condition of the buyer(s) of the property, so that those documents could be forwarded to the mortgage lender in support of the buyer's request for a loan. In some instances, false tax returns were represented to mortgage companies as having been submitted to the Internal Revenue Service, when the returns had not been submitted.

As part of the loan and closing transactions, applications, settlement statements, and other documents were faxed and mailed from Lexington, Kentucky to mortgage companies throughout the United States. Money from mortgage companies was wire transferred to Universal Title Services by mortgage lenders outside the Commonwealth of Kentucky.

At closing, it was routine for Kim Allen Clay to disburse portions of fraudulently obtained loan proceeds into the accounts of one of James Davis's limited liability companies. From there, the fraudulent proceeds were split-up among conspirators, often with the fraudulent buyer receiving a substantial portion of the funds. During most transactions, James Davis eventually received a portion of the fraudulent proceeds. Warren Reid, Felix Oliver, Thomas Muhammad, and other real estate professionals routinely received commissions for their respective roles in the real estate transactions. These commissions were typically paid out of loan proceeds via the Universal Title Services escrow account, but were sometimes supplemented by separate payments from Clay or Davis to the professionals. Kim Clay also received fees associated with the real estate closings and issuance of title insurance, as well as receiving other collateral benefits such as residing rent-free in one of James Davis's houses.

4. The maximum statutory punishment for the count in the Information is imprisonment for not more than 30 years, a fine of not more than $1,000,000, and a term of supervised release of not more than 5 years. A mandatory special assessment of $100

applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

> (a) The November 1, 2009 version of the Sentencing Guidelines should be used in this case.
>
> (b) The United States Sentencing Commission guideline for violation of 18 U.S.C. § 1349 is found in U.S.S.G. § 2X1.1. This guideline calls for a cross-reference, pursuant to U.S.S.G. §2X1.1(a), because the conspiracy is expressly covered by another offense guideline section. In this case, U.S.S.G. § 2B1.1 is the appropriate guideline for the underlying offense committed, namely Wire Fraud. U.S.S.G. § 2B1.1(a)(1) calls for a base offense level of 7 as the offense of conviction has a statutory maximum term of imprisonment of 30 years.
>
> (c) Pursuant to U.S.S.G. § 2B1.1(b)(1)(H), the offense level is increased by 14 because the loss exceeds $400,000, but does not exceed $1,000,000.
>
> (d) Pursuant to U.S.S.G. §2B1.1(b)(2)(A)(i), there is an additional two-level increase because the offense involved 10 or more victims.
>
> (e) The parties contemplate no victim-specific adjustments from Chapter Three of the Sentencing Guidelines.
>
> (f) Pursuant § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. The parties agree that, pursuant to 18 U.S.C. § 3663A, restitution shall be ordered in this case. As of the time of the entry of the plea, the parties agree that the total restitution

due is $417,899.04. The parties further agree to recommend that the Defendant make restitution, jointly and severally with Kim Allen Clay, to the following victims in their corresponding amounts:

      (a) Deutche Bank National Trust Company — $208,112.59

      (b) Merrill Lynch Mortgage Lending, Inc. — $88,156.00

      (c) Wells Fargo Bank, North America — $29,776.59

      (d) Bank of America — $91,853.86.

These figures represent the victim losses reported by responsive victims as of the time of the guilty plea. The parties recognize that the Court is free to consider additional victim impact statements, should any become available prior to sentencing.

7. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

8. The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

9. The Defendant waives the right to appeal and the right to attack collaterally the guilty plea and conviction. He specifically reserves the right to appeal his sentence, including any order of restitution exceeding $417,899.04.

10. The United States will recommend to the Court that the Defendant be released on conditions pending future court appearances.

11. After pleading guilty, the Defendant will make a full and complete financial disclosure to the United States and will assist the United States in the gathering of all financial information. The Defendant will complete and sign a financial disclosure statement or affidavit, will sign financial releases prepared by the United States, and will submit to a deposition in aid of collection at times and places that the United States directs. The Defendant agrees that any unpaid penalty will be submitted to the United States Treasury for offset. If the Defendant fails to comply with any of the provisions of this paragraph, the United States will not move the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may in its discretion argue to the Court that the Defendant should not receive a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).

12. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

13. This document and the sealed supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JAMES A. ZERHUSEN
UNITED STATES ATTORNEY

Date: 3/5/10          By: _____
                           Brandon W. Marshall
                           Assistant United States Attorney

Date: 3/5/10          _____
                      James W. Davis
                      Defendant

Date: 3/5/10          _____
                      Steve Fishman
                      Attorney for Defendant

**APPROVED**, this 5th day of March, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE

7